UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 3:15-CR-015-LRH-VPC |
| ) | |
| v. ) | |
| ) | ORDER |
| SHAUN JERMAINE ESTES, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Interested Party City of Reno's ("the City") Motion to Quash Subpoena. Doc. #22.[1] Defendant Shaun Jermaine Estes ("Estes") filed an Opposition (Doc. #23), to which the City replied (Doc. #25).

**I.    Factual Background**

On December 4, 2014, Estes was approached at the Amtrak station in Reno, Nevada, by law enforcement officers because he had "indicators on his reservation that were consistent with individuals traveling on Amtrak with the intent to transport illegal contraband and or the profits made from the sales of illegal contraband." Doc. #23 at 2. One officer identified himself, explained his reasons for contacting Estes, and asked whether he could search Estes' luggage and room for illegal contraband. Estes denied consent. The officers wrote in their police report that Estes later consented to a search of his sleeper car and luggage when approached by officers and a

---

[1] Refers to the Court's docket number.

trained drug detection canine. The search led to the discovery of a semi-automatic handgun in Austin's possessions. Estes was charged under 18 U.S.C. §§ 922(g)(1) and 924(A)(2) as a felon in possession of a firearm on January 28, 2015. Doc. #1.

On August 6, 2015, the Reno Police Department Records Division received a subpoena *duces tecum* from Estes. The subpoena requested:

> Certified copies of the following documents whether contained within personnel files maintained by the Reno Police Department: disciplinary files, citizen complaint files or any files that contain information regarding performance and disciplinary issues, written or verbal reprimands, citizen complaints, suspensions, codes of conduct, internal investigations and all reports or documents pertaining to criminal or civil law suits including civil rights violations filed against or in regards to the Reno Police Officers involved in the investigation of RPD case number 1416979C. These officers include but are not limited to Madhu Kurup, Detective Tony Moore, Jayson Hill, Officer Welch (#9713) (first name unknown).

Doc. #22 at 3. The City moved to quash this subpoena on August 14, 2015. Doc. #22.

## II.   Legal Standard

The party seeking pretrial production of evidence bears the burden to show good cause for production before trial. *United States v. Lambeth*, No. 2:08-cr-0115, 2010 WL 4117681, at *3 (D. Nev. Oct. 8, 2010). Federal courts generally follow the standard established by *United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1952), to determine whether the moving party has established good cause for production. *United States v. Nixon*, 418 U.S. 683, 699 (1974). *Iozia* provides that good cause for pre-trial production requires a showing:

> (1) That the documents are evidentiary and relevant;
>
> (2) That they are not otherwise procurable by the defendant reasonably in advance of trial by the exercise of due diligence;
>
> (3) That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial;
>
> (4) That the application is made in good faith and is not intended as a general fishing expedition.

13 F.R.D. at 338.

///

2

The party seeking pretrial production bears the burden of establishing relevancy, admissibility, and specificity. *Nixon*, 418 U.S. at 700.  Conclusory allegations of relevance and admissibility are insufficient to meet the moving party's burden. *Lambeth*, 2010 WL 4117681, at *3 (citing *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981)).  Rather, there must be a "sufficient likelihood that the requested material is relevant to the offenses charged in the indictment, and the moving party must make a sufficient preliminary showing that the requested material contains admissible evidence regarding the offenses charged." *Id.* (citing *Nixon*, 418 U.S. at 700).

Federal Rule of Criminal Procedure 17(c)(1) governs the production of documents and objects, and provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Although Rule 17 is not a discovery device, it may be used to obtain evidentiary materials. *Lambeth*, 2010 WL 4117681, at *2 (citing *Nixon*, 418 U.S. at 689, 699-700).  Leave of court is required for a pretrial subpoena under Rule 17(c)(1) in criminal proceedings. *Id.* at *3.  Granting a pretrial subpoena under Rule 17(c)(1) is "committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *Nixon*, 418 U.S. at 702.

**III.   Discussion**

The City moves to quash this subpoena because none of the named officers are parties to this action, nor have they been involved in wrongdoing.  Additionally, neither party has produced a witness list for trial at this point, so it is unknown if these officers will be called to testify at trial. The City argues that the proper *Brady* and *Giglio* process will occur if Moore, Hill, and Welch are

///

///

called to testify at trial.[2]  Estes argues that "the requested records will allow the defense to assess the officers' credibility, and to conduct an effective cross-examination of the officers who stopped, questioned and allegedly obtained consent to search from Mr. Estes."  Doc. #23 at 2.

In *United States v. Henthorn*, the Ninth Circuit considered a defendant's request for federal prosecutors to produce "the personnel files of all law enforcement witnesses whom it intends to call at the trial . . . for evidence of perjurious conduct or other like dishonesty, in camera, to determine if those portions of the officers' personnel files ought to be made available to defense counsel for impeachment purposes."  931 F.2d 29, 30 (9th Cir. 1991).[3]  The court held that "the government has a duty to examine personnel files upon a defendant's request for their production." *Id.* at 31.  The court rejected the assertion that it is the defendant's burden to make an initial showing of materiality, adding that "[t]he obligation to examine the files arises by virtue of the making of a demand for their production.  However, following that examination, the files need not be furnished to the defendant or the court unless they contain information that is or may be material to the defendant's case." *Id.*

This District has held that when a criminal defendant requests a law enforcement officer's personnel files, the government is entitled to "review the file and disclose to the defense materials therein relevant to the impeachment of testifying officers . . . because evidence reflecting negatively on a Government witness's credibility constitutes a species of *Brady* material." *United States v. Booth*, No. 2:08-cv-0283, 2011 WL 6139062, at *3 (D. Nev. Dec. 9, 2011) (citing *Henthorne*, 931 F.2d at 30-31).  "If the United States is unsure as to the impeachment value of certain information, it must submit it for *in camera* review." *Id.*  The government might later be found to have violated *Brady* for improperly withholding certain documents, but courts nonetheless cannot require the

---

[2] The City's Motion does not pertain to Madhu Kurup: "The City believes he is employed by Amtrak. As such, the City has no records relating to Mr. Kurup that would be responsive to this subpoena."  Doc. #22 at 3.

[3] *Henthorn* regards the obligation for federal prosecutors to review personnel files of *federal* officials upon defendant's request and is, therefore, not directly applicable to the City's Motion to Quash Estes' request for the City of Reno to produce personnel files.

government to disclose all personnel records without a showing of relevance, admissibility, and specificity. *Id.*

Estes has not met his burden of establishing relevancy, admissibility, and specificity. Estes states that "the only evidence received regarding the police encounter with Mr. Estes is a Reno Police Department arrest report and declaration of probable cause authored by Tony Moore and a police report authored by Madhu Karup." Doc. #23 at 5-6. Estes adds that in light of the dearth of evidence received through discovery, personnel records of the officers involved "is critical to Mr. Estes in attacking the officer's credibility on the stand" under Federal Rules of Evidence 608(a) and 608(b). However, Estes has failed to identify with any specificity what he suspects that the personnel documents will reveal about Moore, Hill, and Welch. Although there appears to be no dispute that these individuals were involved in Estes' arrest, Estes has not identified reason to believe that information in their personnel records is relevant to his arrest such that they should be compelled now rather than through the standard *Brady* and *Giglio* process if called as witnesses at trial. Thus, Estes' conclusory allegations about relevance and admissibility amount to little more than a fishing expedition and are insufficient to establish that pretrial production of the officers' personnel records is necessary at this point. *Lambeth*, 2010 WL 4117681, at *3. A review of *Brady* materials for disclosure of relevant documents to defense counsel may be appropriate, however, if and when the officers are identified as witnesses who will testify at trial. *Booth*, 2011 WL 6139062, at *3 (ordering a review of personnel files "relevant to the impeachment of *testifying officers*").

**IV.    Conclusion**

IT IS THEREFORE ORDERED that the City's Motion to Quash (Doc. #22) is GRANTED without prejudice.

IT IS SO ORDERED.

DATED this 4th day of September, 2015

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE