UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

SHAUN JERMAINE ESTES,

    Defendants.

3:15-CR-00015-LRH-VPC

ORDER

Before the Court is Defendant Shaun Jermaine Estes' ("Estes") Motion to Suppress. Doc. #38.[1] The United States of America ("United States") filed an opposition (Doc. #41), to which Estes replied (Doc. #43). An evidentiary hearing was held on March 30 and 31, 2016, during which witnesses testified and exhibits were admitted.

During the course of the suppression hearing, defense counsel offered into evidence exhibits numbered 125, 126, 127, 128 and 130, which were records subpoenaed by the defense from T-Mobile U.S., Inc., and related documents, relevant to the history of Estes' cell phone usage on December 4, 2014. The government objected to the records based upon their prior non disclosure to the government and the Court reserved ruling but conditionally admitted them and allowed time for the parties to submit points and authorities in support of their respective positions. In reviewing the recent points and authorities filed by the parties and further considering the failure of disclosure of the telephonic records to the government, as had been ordered by the Court in its October 22, 2015 order (ECF No. 34), the Court is hereby sustaining

[1] Refers to the Court's docket number.

1

the government's objection to the admissibility of Exhibits 125, 126, 127, 128 and 130, and is not considering them in deciding the motion to suppress before the court.

## I.     Factual Background

On December 4, 2014, in Reno, Nevada, Amtrak Detective Madhu Kurup ("Kurup") contacted Estes while he was on the Amtrak train platform smoking a cigarette and speaking on his cell phone. Estes was en route by train from Chicago, Illinois, to Emeryville, California. The train had made a brief stop of less than 15 minutes at the Reno station. Sometime prior to the train's arrival, Kurup, as a member of a drug interdiction team associated with the Reno Police Department, studied passenger booking records and found that Estes' one-way ticket had been purchased with a credit card in another person's name on November 29, 2014, for travel beginning December 2, 2014. Kurup considered this to be an indicator of an intent to transport illegal contraband and/or profits made from the sales of illegal contraband. A Reno police detective and a canine officer from the interdiction team were requested for purposes of investigation of Estes during the train's stop in Reno.

When the train stopped in Reno, Kurup and Reno police detective Tony Moore ("Moore") had checked Estes' cabin and found it empty. Shortly afterward, Kurup observed a man speaking on a cell phone and smoking a cigarette on the passenger platform adjacent to the train. Suspecting this might be Estes, Kurup approached him, displayed his badge, identified himself and confirmed that the individual was Estes. Kurup directed Estes to get off the phone and Estes complied. Kurup then asked to see Estes' identification and train ticket, which Estes provided. With Moore then standing nearby, Kurup advised Estes that he was suspected of illegal activity and asked if Estes had any illegal weapons, large amounts of drugs, or large amounts of money. Estes responded that he was not in possession of anything illegal. Kurup then asked Estes for consent to search his room and luggage. Estes refused to consent. Kurup then advised Estes that a police dog would be deployed in the area of Estes' train cabin and if the dog gave a positive alert, Estes' belongings would be seized and a search warrant would be obtained. Kurup and Moore then alerted canine Officer Jayson Hill ("Hill"), who was stationed nearby with his

police dog. With Estes, Kurup and Moore in the hallway area outside Estes' cabin, Hill lead his dog through hallway.

The person with whom Estes had been speaking on his cell phone on the train platform was a longtime friend, Erika Dean. During the time that Kurup and Moore escorted Estes back to the area of his train cabin, Dean was concerned about her terminated phone conversation with Estes and repeatedly attempted to call him back on his cell phone. Her calls went unanswered until either Kurup or one of the officers finally answered the phone and advised that Estes could not speak with her.

When the police dog was led down the hallway by Estes' room, it showed some interest outside of the room, but did not "alert" on the room. The officers knew they could not seize Estes' belongings and obtain a search warrant due to the lack of a positive alert by the dog. However, Kurup did not advise Estes that the canine had not alerted on Estes' room. Instead either Kurup or Moore told him that the dog had shown strong interest in the room. According to Kurup, Estes then responded that he had a small amount of marijuana in his room and he then gave his consent to Kurup to search the room and Estes' baggage. According to Kurup, Estes opened his luggage bag in the room and removed a small bag of marijuana and Kurup then, with Estes' consent, searched the remainder of the bag and found a 9mm Kel-Tec handgun. Kurup told Estes he was in violation of Amtrak's firearms policy and he would be removed from the train. Detective Moore thereafter contacted records and learned that Estes had a prior felony conviction. Estes was then placed under arrest for Felon in Possession of a Firearm and placed in handcuffs. Estes made an unsolicited comment that he had purchased the weapon from a pawn shop in Arkansas and he believed the purchase was legitimate and legal. After exiting the train and meeting up with transport officers, Estes was advised of his Miranda rights and repeated the statement. He was then booked in jail.[2]

## II.   Legal Standard

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. Any evidence resulting from an unconstitutional search or seizure cannot

---

[2] Estes has been in federal custody since March 12, 2015.

be admitted as proof against the victim of the search, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).  Although warrantless searches generally are impermissible under the Fourth and Fourteenth Amendments, one exception to the warrant requirement is for searches conducted pursuant to valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The government must prove that a consent to search is voluntary by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 (1974). A consent to search is valid if the consent was freely and voluntarily given and not the result of duress or coercion, express or implied. *Schneckloth*, 412 U.S. at 228. Whether the consent given to search was freely and voluntarily given is a question of fact to be determined by the totality of the circumstances. *Id*. at 248–49. The government's burden of demonstrating that the consent was freely and voluntarily given is a heavy one. *United States v. Chan-Jimenez*, 125 F.3d 1324 (9th Cir. 1997).

**III.    Discussion**

Estes argues, among other things, that he did not consent to the search of his belongings on the Amtrak train and that even if he did, his consent was not freely and voluntarily given. The United States argues that the search of Estes' belongings was constitutional because Estes provided voluntary consent for the search.

The Court finds that Erika Dean's testimony at the suppression hearing was very credible. Estes and Dean were engaged in a cell phone conversation when Kurup approached Estes, Kurup directed Estes to get off the phone, Estes complied with the request. Dean could hear Estes being directed to get off the phone and she became concerned when Estes did not call her back shortly thereafter. She then repeatedly attempted to call Estes back, several calls went unanswered, until finally an officer answered and spoke briefly to her. Kurup testified that he never saw Estes speaking on the phone on the platform, never told him to get off the phone, never heard the phone ring while he was with Estes, and never answered the phone or spoke with a caller. The two police officers had no recollection of Estes using his phone, the phone ringing or anyone answering it.

In order to establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given. *Schneckloth*, 412 U.S. at 222. Whether consent to search was voluntarily given or not is "to be determined from the totality of all the circumstances." *Id*. at 227. *In United States v. Welch*, 4 F.3d 761, 763 (9th Cir.1993), the Ninth Circuit identified several factors to be considered in determining whether consent to search was voluntary. Among the factors that tend to show a lack of voluntariness are: (1) the person was in custody; (2) the officer had his weapon drawn; (3) the officer failed to administer Miranda warnings; (4) the officer did not inform the person of his right to refuse to consent; and (5) the person was told that a search warrant could be obtained. *Chan-Jimenez*, 125 F.3d at 1327. The government must prove that a consent to search is voluntary by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178, 94 S. Ct. 988, 996, 39 L. Ed. 2d 242 (1974).

The United States has not met its burden to show that consent by Estes was freely and voluntarily given. When initially asked, Estes expressly refused to consent to the search of his room or his bags. Kurup then advised Estes that a police dog would be deployed and if the dog gave a positive alert, Estes' items would be seized and a search warrant would be obtained. The threatened seizure of Estes' bags is significant when it is considered that Estes was traveling by train across the country, and this incident was occurring during a brief stop along his journey to California. Then, shortly after being told that an alert of Estes' room by the police dog would result in his bags being seized, Estes was informed that the dog had shown strong interest in the room. No one explained to Estes the difference between an "interest" and an "alert" by the dog, and it was shortly afterward that the disputed consent by Estes was given. The context in which the statements were made strongly suggested that if Estes did not now consent to a search, his bags would be seized and a search warrant would be obtained. Particularly after refusing to consent to a search just minutes before, the court does not find that a free and voluntary consent to search then occurred. *See United States v. Armijo*, 781 F. Supp. 1551, 1558 (D.N.M. 1991) ("In fact, prior to being threatened that his car and his mother would be detained, Mr. Armijo unequivocally declined to consent to a search of his luggage. It was only after Agent Small's

5

threat that Mr. Armijo reluctantly surrendered the luggage. It is clear, therefore, his consent was not voluntarily given").

The court is troubled by the lack of credibility which permeates the Kurup testimony in this case. The court comments on some of the factors of concern:

Kurup described a very consensual and casual conversation with Estes on the train platform. The fact is that the encounter with Estes had been carefully planned by the drug interdiction team composed of Kurup, Detective Moore, and canine Officer Hill. The only purpose of their being together at the Reno train station was to confront Estes and to act within an approximate ten to fifteen minute period of the train's temporary stop. When Kurup approached Estes on the train platform, there was an obvious immediacy in the encounter. The denial by Kurup of Estes being involved in a cell phone conversation on the train platform, of directing Estes to get off the phone and not hearing repeated return calls by Erika Dean in the several minutes following the conversation, raises serious questions concerning Kurup's description of a seizure-free atmosphere surrounding Estes as well as Kurup's credibility in general.

Further concern arises from the warning given to Estes that if he refused to consent to a search, that a canine sniff would be conducted and if the dog alerted to the room or Estes' belongings, Estes' belongings would be seized and a search warrant obtained, obviously separating Estes from his luggage. Further concern arises after the dog did not alert to the room, which was a fact only appreciated by Kurup and the police officers. Notwithstanding the clear lack of probable cause for a search and seizure, Estes was then informed that the dog had shown serious interest in the room. Estes would likely have no idea of the difference between an alert and only interest in the room. The "serious interest" comment was obviously imparted with the hope that it would bring about a consent by Estes to a search of his room and luggage. At no time was Estes told of his right to refuse consent.

Kurup's credibility is further strained by the consent then attributed to Estes. Although Kurup and the two police officers were at the train stop together for the ten to fifteen minute period for the specific purpose of investigating Estes and his possible involvement with drugs,

Estes' voluntary consent to search testified by Kurup was not witnessed at any time by either of the two police officers. No attempt was made by Kurup to have Detective Moore or Officer Hill witness or confirm the alleged consent by Estes, no attempt was made to create an audio recording of Estes' consent, and no attempt was made to obtain a written consent from Estes although a consent form is a standard form used in Reno police investigations.

**IV.    Conclusion**

Considering all of the above, and particularly because the consent claimed by Kurup is totally uncorroborated, the government has failed to meet its burden to prove a free and voluntary consent in this case. As a result, the evidence seized and any incriminatory statements arising from such an unlawful seizure must be suppressed.

IT IS THEREFORE ORDERED that Estes' Motion to Suppress (Doc. #38) is GRANTED, the Indictment against Estes is DISMISSED and trial is VACATED.

IT IS SO ORDERED.

DATED this 18th day of April, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE